596 A.2d 298

**Representative Robert E. BELFANTI, Jr., a member of the House of Representatives; Senator James J. Rhoades, a member of the State Senate et al., Petitioners,**

**v.**

**Honorable Robert P. CASEY, Governor, Commonwealth of Pennsylvania et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 12, 1991.

Decided Aug. 2, 1991.

534

Alaine S. Williams, for petitioners.

R. Douglas Sherman, Deputy Atty. Gen., for respondents.

Carl H. Shuman, Deputy Gen. Counsel, for individual respondents and Dept. of Public Welfare.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

The Commonwealth of Pennsylvania, Department of Public Welfare, Governor Robert P. Casey and other public officials (Respondents), have filed preliminary objections to the Petition for Review filed by Representative Robert E. Belfanti, Jr., a member of the State House of Representatives, Senator James J. Rhoades, a member of the State Senate, and the American Federation of State, County and Municipal Employees, Council 13 and its representatives (Petitioners), seeking declaratory and injunctive relief to prevent Respondents from implementing the scheduled closing of Philipsburg State General Hospital (PSGH) on March 31, 1991. Petitioners contend that the scheduled closing violates the Reorganization Act of 1955 (Reorganization Act), Act of April 7, 1955, P.L. 23, 71 P.S. §§ 750–1 to 750–12 and constitutes an unlawful impoundment of funds by the General Assembly of the Commonwealth by not continuing to fund PSGH.

In preliminary objections, Respondents contend that Petitioners have failed to state a claim cognizable under the Reorganization Act and have failed to state a claim that the Governor improperly impounded funds as to each and every individual named Petitioner. Individually-named Respon-

dents and the Department of Public Welfare have also filed preliminary objections stating that Petitioners' Petition is non-justiciable under the Political Questions Doctrine, as well as being moot because PSGH has already closed.

PSGH is a 107–bed general hospital located in Philipsburg, Pennsylvania, and was established by the General Assembly pursuant to the Act of 1887, Act No. 265, P.L. 401, 35 P.S. §§ 31–34. In February, 1990, Governor Casey submitted a proposed budget to the General Assembly for fiscal year 1990–1991. In the proposed budget, the Governor sought $15,506,000.00 in state funds for the operation of state general hospitals. None of the funds were designated to operate PSGH or the state hospitals located in Hazelton and Scranton. The Governor sought to close PSGH because it was underutilized and because it required large state subsidies for its operations [1] and an additional $5,600,000.00 for capital improvements to its facilities.

On June 30, 1990, the General Assembly enacted the General Appropriations Act of 1990, Act of July 1, 1990, P.L. ___, No. 7–A (Act 7–A), which was signed into law by the Governor. Act 7–A appropriated $15,249,000.00 for the operation of state hospitals but included no appropriation for PSGH. Because of a pending House report concerning future operation of state hospitals, the Governor delayed the closing of PSGH and sought a supplemental appropriation.

On January 7, 1991, however, Governor Casey announced his intention to close PSGH on or before March 31, 1991. On February 15, 1991, PSGH stopped admitting patients. On January 16, 1991, the Department of Public Welfare's Secretary Sewell informed the Executive Director of AFSCME that PSGH would close as of that date. As of March 9, 1991, no patients were receiving medical care at PSGH.

---

1. PSGH required $12,714,000.00 in the 1989–90 budget year in state subsidies, and in the present budget year, PSGH has already required $1,331,000.00 in state funds.

■ Respondents contend that the closing of PSGH does not violate the provisions of the Reorganization Act because the closure of state hospitals is not governed by its provision. The Reorganization Act provides the Governor with a streamlined mechanism to secure legislative approval for the reorganization of functions of state government to foster effectiveness and promote efficiency. Section 3 of the Reorganization Act, 71 P.S. § 750–3. If the Governor finds that the abolition, consolidation or transfer of functions of an *agency* is necessary to promote the purposes advanced by the Act, the Governor transmits the reorganization plan to the General Assembly. Section 4 of the Reorganization Act, 71 P.S. § 750–4. The reorganization plan must be approved or denied by separate resolution by each House of the General Assembly within thirty calendar days. Section 7 of the Reorganization Act, 71 P.S. § 750–7.

The term "agency" as used in the Act is defined as "any executive or administrative department, commission, council, board, bureau, division service, office, officer, administration or other establishment in the executive or administrative branch of State Government." Section 2 of the Reorganization Act, 71 P.S. § 750–2. Petitioners contend that PSGH is an agency because the day-to-day administration of PSGH is supervised by a Board of Trustees and that the closure of PSGH would deprive that Board of any function. Moreover, Petitioners contend that PSGH, as a statutorily authorized facility, is an agency because it is a "service" to residents and other establishments protected by the Act. We disagree.

The PSGH Board was not the type of board envisioned by the Reorganization Act that was required to undergo the reorganization process. The boards that were so anticipated by the General Assembly were independent agencies such as the Labor Relations Board, Milk Marketing Board or other boards which implemented statewide programs. PSGH's Board is one that operates only that institution and is not an independent agency. That term envisions an agency similar to one that must be reviewed by the General

Assembly under the provision of the Sunset Act, Act of December 22, 1981, P.L. 508, §§ 1–14, *as amended,* 71 P.S. § 1795.1–1795.14. The definition of "agency" contained in the Sunset Act is almost identical to the one under consideration in the Reorganization Act. *See* Section 2 of the Sunset Act, 71 P.S. § 1795.2. Accordingly, it is not the type of board that requires the General Assembly's approval under the Reorganization Act.

Nor by closing a state hospital is the Governor abolishing a "service" within the meaning of the Act. While certain services may no longer be available as a result of the closing of PSGH, a state hospital is not the type of service envisioned when the General Assembly passed the Act. Envisioned again was an independent agency of the Commonwealth akin to the Forest Service or the National Park Service and not medical services at a particular location.

In *Vovakes v. Commonwealth, Department of Transportation,* 71 Pa.Commonwealth Ct. 3, 453 A.2d 1072 (1982), this Court found that an interagency reorganization which combined two Department of Transportation (Penn-DOT) bureaus did not come within the purview of the Reorganization Act. We held that the Reorganization Act is only applicable to transfers of duties from one department of government to another, but not to the abolishment of internal departments within a department. By so holding, we recognized that the General Assembly had previously given to PennDOT the power over bureau and divisions within that Department.

Similarly, here, the Public Welfare Code (Code) [2] grants the Secretary of the Department of Public Welfare broad power over all institutions under the jurisdiction of the Department. Section 303 of the Code, 62 P.S. § 303. We have previously held that such power also includes the power to close those institutions because the Secretary is empowered to make a determination as to the need for those institutions. *See, e.g., Bell v. Thornburgh,* 491 Pa.

2. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 201–1411.

263, 420 A.2d 443 (1980); *Preston v. City of Philadelphia*, 26 Pa.Commonwealth Ct. 106, 362 A.2d 452 (1976). Here, although not controlling, the General Assembly must also have considered there was no need for PSGH because it declined to appropriate funds for PSGH's continued operation.

Even if Section 303 of the Code did not expressly authorize Respondents to close state institutions like PSGH, the courts of this Commonwealth have upheld the Department of Welfare's inherent right to exercise its discretion to close particular facilities when those facilities are no longer needed to service the residents or are no longer efficient or effective. As this Court has stated in *Hollick v. Retreat State Hospital*, 24 Pa.Commonwealth Ct. 218, 223–24, 354 A.2d 609, 611–12 (1976), *affirmed per curiam*, 476 Pa. 317, 382 A.2d 739:

> Contrary to plaintiff's assertion, we can find no duty placed upon the State ... that ... any particular mental health facility must remain open and functional for any specific or indefinite future period of time....
>
> Nor are we persuaded that the provisions of Section 202 of the Act directing the State to operate State facilities and authorizing the establishment of additional facilities, either specifically or inferentially, require the State to continue to operate forever all State mental health facilities functioning at the time of the passage of the Act. *The absence of a specific authorization in the Act to terminate the operation of a particular mental health facility adds no weight to the inference that plaintiff would have us find in this section.*
>
> The manifest object of the General Assembly in enacting the Mental Health and Mental Retardation Act of 1966 was to create a cooperative State-county ... program across the Commonwealth for those who suffer mental health or mental retardation afflictions. Its implementation and need for flexibility to meet improved or new methods and means of treatment would be seriously impaired if not totally frustrated if [any] particular State

mental health facility were to enjoy such a monolithic status. *To retard or restrict State action in the operation of such a program, a clear specific legislative intent that a particular mental health facility shall remain functional would be required. The Act contains no such provision.* (Emphases added).

We find then that the Reorganization Act does not apply to the closure and claims based on that count are dismissed. Respondents have also filed preliminary objections to Petitioners' claim that they are entitled to relief because the action by the Governor in closing PSGH amounts to an impoundment of legislatively appropriated funds.[3] The Petition for Review, however, pleads facts that support the exact opposite conclusion. The Governor informed the General Assembly that he was going to close PSGH and the General Assembly appropriated no funds for its continued operation.

In February 1990, the proposed budget which Governor Casey submitted to the General Assembly sought $15,506,-000.00 in state funds for the operation of state general hospitals, but no money was sought for the operation of PSGH. The General Assembly appropriated only $15,249,-000.00 for funding of state hospitals in Act 7–A, which was signed into law by the Governor. From the foregoing, it is clear that the General Assembly adopted the Governor's position that PSGH should be closed.

An impoundment of funds involves executive disregard of the legislative mandate not where the General Assembly, as here, was consulted and concurred in an action proposed by the Governor.

The courts of this Commonwealth have consistently held that the executive branch may close a state hospital without prior approval of the General Assembly. *See Bell v. Thornburgh,* 491 Pa. 263, 420 A.2d 443 (1980); *Cook v. Commonwealth,* 61 Pa.Commonwealth Ct. 152, 432 A.2d 1139 (1981), *aff'd* 496 Pa. 419, 437 A.2d 944 (1981); *Preston v. City of*

---

**3.** We note that Petitioners did not brief this issue.

*Philadelphia,* 26 Pa.Commonwealth Ct. 106, 362 A.2d 452 (1976); *Hollick.* Even though for the first time a challenge has been made under the Reorganization Act and under a theory of impoundment of funds, the outcome is no different. The Reorganization Act does not require prior legislative approval for the closure of state hospitals, as well as, assuming actionable, there has been no impoundment of funds.[4]

Accordingly, Respondents' preliminary objections are sustained and Petitioners' Petition for Review is dismissed.

SMITH, J., dissents.

## ORDER

AND NOW, this 2nd day of August, 1991, Respondents' preliminary objections are sustained and the Petitioners' Petition for Review is dismissed.

---

**4.** Because we have held that Petitioners' Petition for Review does not set forth a cause of action, there is no need to address the Commonwealth's remaining preliminary objections.